And at this time, we'll hear United States v. Walters. Good morning. Good morning. My name is Alexandra Shapiro, and I represent William Walters on this appeal. The prosecution and conviction of Mr. Walters was tainted by extraordinary government misconduct from start to finish. It began with a deliberate, systematic campaign to violate grand jury secrecy. The FBI agent supervising the investigation, quite remarkably, has admitted that in order to revive what he called a dormant investigation, he embarked on a deliberate, extensive, and illegal campaign to leak confidential grand jury information to reporters at The Wall Street Journal and The New York Times in exchange for information about Mr. Walters from these reporters and in order to generate press that could create evidence for the government. The government then tried to conceal this. The defense filed a pretrial motion about this, and the government told the district court that this defense motion and request for a hearing was a phishing expedition and baseless. They repeatedly stated that the leaks had not come from the government, and their briefs stated that there was no leaked information in these articles. They submitted a sworn declaration, which also contained, at worst, misleading information. The district court had initially ordered a hearing, and then the government, in order to prevent Mr. Walters from further exploring the facts and developing the record of how he was prejudiced, tried to avoid the hearing and was successful by then submitting an unsworn letter attaching six partial emails out of thousands of emails and texts that the government had apparently reviewed over just a three-month period as opposed to the entire two years that we now know this agent was conducting this leaks campaign. You're arguing that this course of conduct amounts to outrageous government misconduct. We are, Your Honor, and also a blatant violation of Rule 6E. What case, in what case have we ever found outrageous government misconduct? Maybe we should more often, but I'm not sure we ever have. Well, Your Honor, just to be clear, we make two separate arguments. So first, there's the argument that the Rule 6E violation itself tainted the investigation, and under Bank of Nova Scotia and numerous cases from this court, the district court could have exercised supervisory authority to either dismiss the indictment or at least hold a hearing, and we're asking— But isn't that subject to an abuse of discretion? No, Your Honor, and we would submit that at a minimum, the decision to hold a hearing here was erroneous because what happened was the government admitted to the misconduct after having concealed it and misled the district court precisely in order to avoid the hearing that would have enabled Mr. Walters, among other things, to discover more facts and prove the prejudice. The government was willing to assume a violation of the rule, but the argument is that there's no prejudice. And what is the prejudice here? Well, Your Honor, there are three things, and I also submit that more could be found at a hearing. First of all, the prejudice is that this investigation was dormant, as admitted not only by the agent, but there are numerous articles which are in the appendix that relate to the leaks that make these statements— The articles don't come out until May of 2014? Your Honor, there are articles, and just as a couple of examples, there's one on page, I believe, A86, another one on 318. Those articles appear in the spring of 2014, and the articles themselves say that the investigation was dormant. The articles don't come out until 2014, but there is evidence that the investigation was ongoing during 2013. Well, Your Honor, the leaks started in 2013— I understand that the leaks started in 2013, but if the basis of the prejudice argument is the articles, the articles don't come out until the spring of 2014, but the government was investigating before that, well before that. Yes, Your Honor, and just to be clear, the point is the government was investigating for several years and was unable to produce enough evidence to indict Mr. Walters. And the articles came out in the spring of 2014. Indeed, in the spring of 2014, additionally, the government submitted an affidavit, a sworn affidavit, in support of its application for a wiretap in which it said that investigative techniques other than a wiretap were not working. So that's additional evidence that the— But there was an ongoing wiretap in play. No, Your Honor. The leaks started in 2013. In 2014, the government told the district court in its application for the wiretap that there was not— that other investigative techniques weren't working, and that's why it needed the wiretap. Then the leaks started— And the fact that you can have an active investigation even if it's not fruitful for a period of time. That doesn't mean it's dormant. Well, Your Honor, this agent said it was dormant, and the point is that nothing was happening, Your Honor. And what happened after the leaks, the articles started coming out, among other things, was that Mr. Davis started to repay a loan that the government claims was a phony loan. The government used this evidence, both in the grand jury and at the trial, to suggest that it was some kind of consciousness of guilt evidence against Mr. Walters. And then on top of that, there's an article in August of 2015, which is the first article that actually names Mr. Davis and that we believe is what triggered him to cooperate, what triggered his cooperation. And so for all of those reasons, we believe that prejudice has been shown. But most importantly, and we've asked as an alternative remedy for this Court to remand the case for the limited purpose of holding a further hearing, we believe that a further hearing would help Mr. Walters further demonstrate the prejudice. His ability to do so was cut off. There are numerous questions that need to be answered that the government has deliberately swept under the rug. For example, who else was involved? The district judge himself, in an order he issued this past April, 2018, on April 2nd, stated that the full extent and identity of the other participants is not yet known to that court. It's clear from what limited information the government has selectively chosen to appeal that numerous others were involved, and potentially not just at the FBI. A hearing is needed to establish that. If there were others involved, how does that impact prejudice? Well, we need to know exactly what was leaked and what, among other things, what did the agents get back from the reporters in exchange for the leaks, and how was that used against Mr. Walters? Was the United States Attorney's Office involved? As I mentioned earlier, not only did the government attempt to conceal this from the district court, and frankly, none of this would have come to light if the district court hadn't initially decided to order a hearing, and the government shouldn't be allowed to simply cut off further inquiry and further deep-six the matter. Doesn't that go to the point that you're really asking this court to take the view that the district court has abused its discretion by not having this hearing that you're now pushing for, when in fact the district court did order the earlier hearing that unearthed the problems you're talking about? Judge Costell, in fact, went forward with the hearing, did he not? It's his view that there's nothing further to be learned that would have an impact under the circumstances, given the fact that government concedes that its agent was a problem. Well, Your Honor, I submit that at a minimum, Judge Costell abused his discretion because what he did was he took the government's concession and accepted the premise that once they had conceded the violation, there was no need for the defendant to have a right to develop any further evidence to establish the prejudice. What is the further need if you were to send this back to the district court? What is the district court supposed to do that he has not done at this point? At a minimum, Your Honor, the district court should direct the government to provide discovery of the other thousands of e-mails and texts that it reviewed, but did not share with the parties or the defendant or the court. And in addition, we believe that a hearing is appropriate as well, but at a minimum, that material should be provided. In addition, it only pertains to that three-month period, and we know that the leaks went on for two years. We don't know what led to the August 2015 article. We would submit that we're entitled to discovery over the entire period. I mean, how could the government have thousands of e-mails related to its own discussions with journalists about this investigation? It's a grand jury investigation. These facts are remarkable. And even the six e-mails that were disclosed to the district court and, by the way, the government initially submitted that letter ex parte and didn't even want to allow the defendant to see it, at least one of the e-mails is not even a full e-mail. And so much is not known about what was leaked, who leaked it, and how it harmed Mr. Walters. What information did the government get from these reporters that was used against Mr. Walters? I see I'm very low on time. I just want to very briefly touch on the perjury issue, because I think what it illustrates is that the extraordinary misconduct in this case did not stop with the investigation and the indictment, but continued through the trial. I think it's quite clear that Mr. Davis was lying about this bat phone, which filled a critical gap in the government's case during the ---- You say he's lying. The jury obviously didn't see it that way. There are at least four cases from this court and one from the Seventh Circuit that we've cited in our papers in which the courts have said that when there's knowingly perjured testimony, and even if some or all of it is unearthed during the trial, that the conviction must be reversed because it's repugnant to the Constitution. And we think that's clear here because it's an absolute certainty that this lie about the bat phone was not true. Mr. Davis was absolutely certain and did not waver. It was one of the few things he didn't waver about in his testimony, that this alleged bat phone handoff occurred at a particular place, the Dallas Airport Love Field Terminal 1, that he saw Mr. Walters' plane, that he described the insignia on the plane, the other participants who came on the plane with Mr. Walters, the purpose of their trip, which was to meet with some banks in Dallas. The district court acknowledged these discrepancies and determined in essence that he was mistaken, that the witness was mistaken. But, Your Honor, there was no basis for that speculation. It was quite clear from all of the evidence that was presented that there was no other ---- The backdrop for this is the very substantial evidence that the government presented, including all the phone calls, the sequences of the phone calls and the trades, other evidence besides Davis. Well, Your Honor, the phone calls that they rely on are what created, precisely what created the gap that caused Mr. Davis to invent this bat phone. There are not records like that during ---- My point simply is we're not looking at the bat phone in isolation. We're looking at the bat phone and the testimony about the bat phone in the context of all of the evidence presented. But, Your Honor, my point is that the bat phone is really the only piece of evidence that the government had to corroborate Mr. Davis' claims of having tipped Mr. Walters about the white wave spinoff. Was the spinoff of the existence of the bat phone corroborated by Mrs. Davis? Mrs. Davis, that was? If anything, her testimony, I think, undermined it. First of all, she said it was maroon, whereas he had stated repeatedly that it was black. She purported to identify two telephone numbers in her own cell phone that she claimed were the numbers for Mr. Davis' bat phone, when, in fact, they were his office telephone numbers. And furthermore, she said that when the divers were, there was a television report about the divers searching, from the FBI, searching the creek, that he smirked and said they'll never find the phone. So I submit that her testimony was completely unhelpful. It's murky and it's tidal. And, I mean, there could be several reasons why he would be skeptical as to whether they would find it. Well, Your Honor, I think what's clear is that he was certain that as to precisely where and what the circumstances were of the handoff, we know that that absolutely happened in December 2012, months after he claimed he had received the phone and had supposedly used it to provide tips to Mr. Walters. You've reserved rebuttal. Thank you, Your Honor. We will hear you then. Good morning. May it please the Court. My name is Brooke Cuccinella, and I represent the government in this appeal, as I did in the case down below. Mr. Walters was convicted of insider trading because he was guilty of insider trading. As Judge Castell found, the proof of Mr. Walters' guilt at this trial was overwhelming. This is not a case where there is a real concern that an innocent man was convicted. What we are doing here today is my adversary is asking this Court to grant the defendant a windfall based on a rogue agent's unauthorized disclosure of grand jury information. As the Court is aware, the government— The misconduct is indeed remarkable, is it not? Agent Shav's conduct in this case is indeed remarkable. I think that our office's reaction to it at the time was appropriate, and I think that it is something that our office and the FBI have both taken very seriously and are very disappointed that this happened. It seems odd also that when the issue was raised by the judge, the government counsel took a who-me position. Who knows? But the government knew a lot. It certainly seems as though Judge Castell would have been on firm ground if he had attacked or questioned the honesty of government counsel. Well, I think there are a number of responses to that. First, I would say that the government acknowledges that we should have done more investigation at that point when the allegations were raised. In retrospect, that's something that I think all of us wish we had done. When you speak of the allegations, you mean the office knew that information from someone privy to what the grand jury was doing had been leaked to two newspapers? Well, the line assistants, myself included, did not have knowledge of that. And so the authors of the brief did not have knowledge of that fact. While it is true that there were individuals at the office, including one of the former assistants who had known of it at the time, that assistant did not recall it during this time. There was no bad faith here with respect to what the representations made to the court. We addressed the motion as it was presented to us. You addressed the motion after a date was set for the hearing. Well, we originally addressed the motion in our response in terms of the legal standard. After a hearing was ordered, then, of course, we did more investigation. And as soon as we realized what had happened, as soon as we went back through the e-mails and realized that this had taken place, we did everything to try and remedy that fact. We asked the court to assume a violation and to move forward with that fact. Agent Shobbs has been referred to not only the FBI's disciplinary committee, but to OIG. There is an ongoing criminal investigation into his conduct. Well, the OIG seems to have his hands full, and I'm not sure when that's going to happen. Well, Your Honor, the PIN investigation, the public integrity section, is ongoing. And Judge Costello is actually monitoring it very closely. In spring, I believe it was last month, he ordered that they continue to give him additional reports. He is staying on top of it to the extent that it is not going fast enough. He has said that he may appoint a special prosecutor because he is concerned that this misconduct be looked into. And it's something that the government feels strongly about as well. There are some open questions, for sure. The government only looked at three months rather than two years. We don't know who else was involved in making leaks. We don't know what information the reporters gave back to the FBI. Why shouldn't there be a hearing to examine these questions and others? Well, I think as Judge Costello found down below, he had an ample evidentiary record to make a finding that there was no prejudice here. Taking the claims of potential prejudice that have been raised, first, with respect to addressing this claim of dormancy, which, to be clear, is a statement that Agent Shobbs made when being questioned. It's a self-serving statement to try and justify why he leaked this information. So I think it's important that it be taken in that context. When Judge Costello was presented with the actual timeline of this investigation, it's clear that the investigation was not dormant. In April of 2013, I believe it was April 26th of 2013, FINRA made a recommendation to the SEC that identified Mr. Walter's trading in Dean Foods. That was the first time that that trading had been identified. It also identified his relationship with Mr. Davis. Well, your footnote one talks about the liberties taken in Walter's brief. You say the case wasn't dormant because it was an active wiretap. That doesn't seem to me like a frenzy of activity. Well, an active wiretap actually, the investigation involved in developing probable cause to get up on a wiretap is actually pretty, I don't know if I'd use the word frenzied, but it is an active investigation. From the point where the FINRA recommendation or FINRA referral came in in April of 2013, the government was actively subpoenaing records and reviewing phone records, trading records, and developing this relationship between Mr. Walters and Mr. Davis. Then you say that the rogue agent was not the agent leading the investigation, as the defendant argued, but was instead a supervisor. So he's the supervisor leading the investigation. I'm not sure that when you undertake to debunk your adversary's argument, you get very far. Well, I think there are a number of inaccuracies in my adversary's brief. Taking those two, I think the implication was that Agent Shobbs was the one that was actually doing the day-to-day investigation and would have known regularly what was going on with that investigation, and that's simply not the case. Well, if he's the supervisor, he could have known as much as he wanted to know. He could have known, but I think that the record that Judge Costell carefully considered in coming to his conclusions debunks that story that Shobbs has presented. He was presented with a timeline of this investigation, which showed very clearly what the government was actually involved in and that the investigation was active. It was opened in 2011 with a focus that was separate from Mr. Davis and Dean Foods. In April of 2013, the FINRA referral comes in, and from there on, the government was doing the typical steps that it does in every insider trading investigation to gather these records and develop a circumstantial case. That is then put together in a very detailed wire affidavit that is taken to a judge who then signs off. That is all happening during this period. That is actually a very aggressive investigation. It's very un- I'm going to say to your adversary's argument that it looks like more than one rogue agent, because there was at least one meeting with the Wall Street Journal with three agents, that they bartered confidential information from the grand jury proceedings for information in the possession of investigative reporters. And that that would be a fruit of the misconduct that nobody knows what it is or how it was used or what effect it had. Well, I think an important fact with respect to that, Your Honor, is that Judge Castell and my adversary had the ability to review the grand jury minutes here. So we know exactly what the grand jury was presented with and what results- It's not about the grand jury minutes. It's about what they have not been able to see, the interactions between the reporters and the investigators, not just the superintendent but the others. That's what's being addressed. And you haven't denied that there are emails, numerous emails, that the defendant counsel has not been able to see. And that Judge Castell, were he to be directed to have this expanded hearing, would obviously have to deal with it, right? Not exactly, Your Honor. Judge Castell has to deal with the issue of whether or not this defendant was prejudiced in this case. And so to the extent he undertook that inquiry, which he did and very carefully considered, as the record below shows, he looked at the grand jury minutes, he looked at the timeline in the investigation, and he determined that there was no prejudice here based on what actually occurred before- Is there any representation to this court that he has reviewed all of the documents that your adversary now believes might yield a different result with respect to prejudice? You're saying that he's looked at that? I'm not saying that he looked at that. What I'm saying is that he found and he stated in the special appendix, page 16, notes that he's noted that a further evidentiary hearing is not necessary here, that he's been provided with sufficient evidence by the parties in order to make a ruling, and that ruling was based on the government assuming a violation of 6E. With respect to the prejudice inquiry, which we have to turn back to here, there simply is no prejudice. And that's something that if a hearing even were to be ordered, there's nothing else for the defendant to explore. Your adversary is pointing out that in this matter, the government produced just 1% or 2% of the information and the e-mails that are potentially relevant. So any lawyer who gets to produce even 99% of the documents the other side wants has a very big advantage. So who knows what's in the others? And how could Judge Castell be confident when Judge Castell has only seen what the government has deigned to produce? Well, Your Honor, again, what Judge Castell was looking at was whether or not there was a violation of grand jury secrecy and then to the extent that that is found, whether or not there has been any prejudice. And so that has to take us back again to the facts of this case. And here, in looking at what was presented to the grand jury, and now I think it's important to remember we're not at the stage pre-trial where we're only going on the grand jury record. There has now been a full and fair trial where the jury convicted the defendant. And I think in this court, in United States v. Eisen, this court also upheld a district court's decision not to hold an evidentiary hearing noting that the defendant had an ample opportunity during the trial in Eisen to further develop prejudice. What is the standard of review here on decision to hold a hearing? Abusive discretion, Your Honor. And Judge Castell did not abuse his discretion. He carefully considered the evidence before him. He repeatedly invited the defense counsel to present to the court examples of prejudice. He thoroughly considered all of them. There is a very thorough record on the potential prejudice. Here, what they have come up with . . . But your adversary's argument is that whatever was going on is going on behind a screen that they cannot look behind. And therefore, if they don't know what was released of the grand jury proceedings, or to whom, or why, or how much, and they don't know what was gotten in return, it's very difficult for them to make the argument of prejudice, isn't it? I disagree, Your Honor. With respect to prejudice, they need to be able to show that in some tangible way that Mr. Walters was denied a fair trial, that there was something that substantially affected either the grand jury's decision to indict or his ability to get a fair trial. Here, there is nothing that rises to that level. The arguments they have made are such stretches with respect to the record here, with respect to Mr. Davis cooperating. That is not something that is a result of these grand jury leaks. But you assert that. I mean, it might or might not be. Pardon? I mean, they say it could be, because Mr. Davis was, as it were, outed in the newspapers, lost his job and his livelihood, was already financially embarrassed, and therefore was reduced to coming to the prosecutor on his knees. Well, two responses to that, Your Honor. First, Judge Costell rejected that argument and found that that was wholly speculative. Second, even if that were the case, this court has considered that in United States v. Freedman, where in that case it was found that the circuit assumed that the prosecution systematically did targeted grand jury leaks for the purpose of cultivating cooperators. And there, the court found that that did not rise to the level of prejudice to warrant the dismissal of an indictment. So even if that were the case, it doesn't rise to the level of prejudice that would result in a different outcome for Mr. Walters. They're seeking a windfall here. The appropriate remedy is what is already happening, that Agent Shobbs has been referred for a criminal investigation, and where they're starting with Agent Shobbs and the disclosures in this case, they have the ability to look into the fact of whether or not other agents were involved, other disclosures were made. All of that can be looked into in that criminal investigation. All of those things that did not impact Mr. Walters' trial here. Here, he was given a fair, full trial. They had the ability to develop additional evidence with respect to Mr. Davis' cooperation at trial. They, in fact, did cross-examine him on it, and it didn't change the outcome. Because Judge Castell considered this so carefully, because he felt that he had a full record, and that there was no prejudice here, the court should affirm his rulings. I see that I'm out of, almost out of time. If there are additional questions, I'm, okay. Your Honors, I'd just like to respond to four points. First, the government says that it takes this matter very seriously. I would submit that the record in this case shows otherwise. First of all, with respect to the referral to main justice, which, by the way, occurred 18 months ago, the district court himself has several times been critical of the meager reports he is getting, which we have no access to, from the Department of Justice. And in his order on April 2nd, which is docket number 264, in addition to noting, as I mentioned earlier, that the extent of the leaks and the identity of other participants is not yet known, the court criticized the government for its failure to really be doing anything about this and noted, for example, that it had previously had occasion to counsel, to use a charitable word, the Public Integrity Unit, for submitting a report with four lines of text beyond the introductory and concluding sentences, which contained virtually no substance. The fact of the matter is nothing has been done, and indeed, Agent Shobbs is out there running a hedge fund consulting business called, believe it or not, ToneAtTheTop.com to this day, apparently unconcerned about this investigation. That would seem to mean he's lost his employment with the government. Oh, well, that certainly may have occurred, but the point is he's out there telling hedge funds how to comply with the law, apparently unconcerned that he's going to be prosecuted, and for good reason. Secondly, with regard to the government's efforts to kind of minimize the extent to which it attempted to mislead the district court, I do want to take just a few minutes and go through some clearly misleading statements in the sworn declaration, the only sworn piece of evidence the government submitted in this matter when it was trying to avoid the hearing. And this is at docket 44 in the district court. I don't believe it's in the appendix, but I would urge the court to scrutinize paragraphs 12, 14, and 17. Paragraph 12 says that on May 13th, the United States Attorney's Office learned from the FBI Press Office that the Wall Street Journal would not be able to publish a story about our investigation until May 22nd at the earliest. In fact, the United States Attorney's Office was well aware that the reason the Wall Street Journal wasn't publishing the piece was that there had been two meetings between the FBI and the Wall Street Journal to urge them not to do so. One on May 6th with Agent Shavs, as well as another person from the FBI, and one on a telephone call on May 13th. And this is reflected at appendix 220 to 222. If you turn to paragraph 14, this sworn declaration states that the assistant had learned from the SEC that the New York Times was considering publishing an article and, quote, realizing there was virtually no chance both papers would hold off on their stories, that a decision was made to approach Mr. Davis and Phil Nicholson. In fact, and this is, there's an email at a- Doesn't that suggest, we can ignore the time, for the time being. Thank you, Your Honor. Doesn't that suggest that these disclosures were impairing and hobbling the government's case rather than- The declaration states that the government thought there was no chance the papers would hold off when in fact the reason that they knew the article was going to be published was because, because, and this is at appendix 230, because the FBI had been in contact with the two newspapers and also felt, and this is just remarkable, I would urge the Court to read this email in the middle of that page, that the FBI had an obligation to tell the journal another journalist was planning to write a story. I mean, this is just, I know this sounds crazy, but it's a conspiracy between the FBI and the Wall Street Journal and the New York Times. I mean, this is unbelievable. Now, my point, though, is that this declaration is incredibly misleading because it fails to disclose this information, which the assistant who signed the declaration is on this email. And then lastly, and not least, paragraph 17. In paragraph 17, this assistant swears that he and the case agent, Mr. Thorsen, that neither of them leaked. Yet, nonetheless, we now know that Agent Thorsen was aware of this May 27th meeting, which had, by the way, five people from the FBI, not three, with the Wall Street Journal, that Agent Thorsen had learned about it at the time, and there's no mention of that in here. There's no mention of all of this other material that we now see numerous high-level assistant U.S. attorneys, the U.S. attorney himself, the deputy U.S. attorney, are on these emails. And yet this declaration simply states that, you know, neither the assistant who signed it nor Mr. Thorsen had leaked. It's certainly literally true. What's the basis for assuming that these five agents were conveying to newspapers information that was derived from the grand jury as opposed to other sources? Leaks are not punishable by dismissal of an indictment. What we do know is that, and what the government admitted in its December 2016 submission, was that there were leaks of grand jury material. There were leaks. And in addition, the problem is that we don't know. So even the government's December 2016 submission makes clear that it has conflicting information about what occurred at this meeting. Agent Shavs and at least one other participant at the meeting apparently, according to the letter, told the United States Attorney's Office that information about the investigation was shared with these reporters at that meeting. Apparently three other members of the FBI deny that. But who knows what really happened? We're not able to explore it, and all we have is the government's say-so in that letter. And I submit that that's unfair. And two other quick points, Your Honor, just with respect to the government's main argument, really, which is, you know, this is a windfall to Mr. Walters. In no way is this a windfall. He was harmed by this pattern of illegal conduct by the government. And the extent of the violation, as the government concedes, as the district court has said as recently as two months ago, remains unknown. And so how can we know to what extent it has prejudiced Mr. Walters when the extent of the violation remains unknown, and the district court allowed it to remain unknown by refusing to hold a hearing at the time? And lastly, I just want to correct one thing, which is the government makes the argument that Mr. Walters had an opportunity at trial to explore these matters. That is, in fact, not true. Defense counsel asked for permission to go into these topics and what Mr. Davis knew about these articles and the leaks, and he was not permitted to do so. So I just want to make sure that I'm clear on that.   Thank you. Thank you, Your Honor. You can find that at transcript page 545 is the district court's ruling, and there's argument that starts a few pages earlier, transcript page 537. If the Court has no further questions, we would ask that the conviction be reversed or at least that the case be remanded for a hearing or a new trial, and I will rest on our papers for the other points that weren't argued today. Thank you, Your Honor. Thank you both. We will reserve decision. The case of Adams v. Horton is taken on submission. That's the last case on calendar. Please adjourn court.